**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JESSE MITCHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14 C 9178** |
| | ) | |
| **ABBVIE INC. and** | ) | |
| **ABBOTT LABORATORIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>INSTRUCTIONS TO THE JURY</u>**

Date:  July 20, 2017

Members of the jury, you have seen and heard all the evidence, and you are about to hear the arguments of the attorneys.  Now I will instruct you on the law.

You have two duties as a jury.  Your first duty is to decide the facts from the evidence in the case.  This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts.  You must follow these instructions, even if you disagree with them.  Each of the instructions is important, and you must follow all of them.  You must also continue to follow the instructions that I gave you at the start of the trial that you may not communicate about the case or about people involved in the case with anyone other than your fellow jurors until after you have returned your verdict.

Perform these duties fairly and impartially.  Each party to the case is entitled to the same fair consideration.  A corporation is entitled to the same fair consideration that you would give to an individual person.

Do not allow sympathy, prejudice, fear, or public opinion to influence you.  You should not be influenced by any person's race, color, religion, national ancestry, age, or sex.  In addition, your verdict may not be based on speculation.

Nothing I am saying now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

To the extent that these instructions differ from the instructions that I read you at the beginning of the case, the instructions that I am giving you now are the ones that govern your consideration of this case.

1

The evidence consists of the testimony, the exhibits, and stipulations. A stipulation is an agreement between both sides that certain facts are true.

Certain testimony was presented to you by the reading or playing of depositions. You should give this testimony the same consideration that you would give it if the witnesses had appeared and testified here in court.

In determining whether any fact has been proved, you should consider all of the evidence bearing on that fact, regardless of who offered the evidence.

You must make your decision based on what you recall of the evidence. You will not have a written transcript of the testimony to consult.

I have taken judicial notice of certain facts. You must accept those facts as proved.

Certain things are not evidence.  I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.  This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence, and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper.  You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence.  Their purpose is to discuss the issues and the evidence.  If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

Certain slides and charts were shown to you during the testimony of the witnesses and during the lawyers' opening statements, and others will be shown during the lawyers' closing arguments, to help explain other evidence that was admitted. These slides and charts are not themselves evidence or proof of any facts, so you will not have them during your deliberations. If any slide or chart that you have been or will be shown does not correctly reflect the facts shown by the evidence, you should disregard it.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we sometimes look at one fact and conclude from it that another fact exists. In law we call this an "inference." A jury is allowed to make reasonable inferences, so long as they are based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

You are to consider both direct and circumstantial evidence. The law allows you to give equal weight to both types of evidence, but it is up to you to decide how much weight to give to any evidence in the case.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the reasonableness of the witness's testimony in light of all the evidence in the case; and

- any inconsistent statements or conduct by the witness.

It is proper for an attorney to meet with any witness in preparation for trial.

You have heard witnesses who gave opinions about certain subjects. You do not have to accept the testimony of such a witness. You should judge it in the same way you judge the testimony of any other witness. In deciding how much weight to give to this testimony, you should consider each such witness's qualifications, how the witness reached his opinions, and the factors I have described for determining the believability of testimony.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You may find the testimony of one witness or a few witnesses to be more persuasive than the testimony of a larger number of witnesses. You need not accept the testimony of the larger number of witnesses.

**The parties and the claims**

The plaintiff in this case is Jesse Mitchell.  I will refer to him as Mr. Mitchell.

The defendants are AbbVie Inc. and Abbott Laboratories.  I will refer to them as AbbVie.  When I use the name AbbVie, I am also referring to several predecessor companies that made and sold AndroGel in the United States.  These include Unimed Pharmaceuticals, Inc., Solvay Pharmaceuticals, Inc., Abbott Laboratories, and AbbVie itself.  For purposes of this trial, AbbVie is legally responsible for the acts and omissions of all of these companies.

This case involves a prescription drug called AndroGel that is manufactured and sold by AbbVie.  The drug is what is called a "testosterone replacement therapy" drug. It was prescribed for Mr. Mitchell by his family physician.  Mr. Mitchell later suffered a heart attack.  Mr. Mitchell alleges in this lawsuit that AndroGel caused his heart attack. AbbVie and Abbott allege that Mr. Mitchell's heart attack was caused by risk factors unrelated to AndroGel.

Mr. Mitchell has made three claims in this lawsuit:  (1) strict liability; (2) negligence; and (3) fraudulent misrepresentation.  You must consider each claim separately.

**Preponderance of the evidence / clear and convincing evidence**

In these instructions, I will use the term "preponderance of the evidence." When I say that a party has to prove a proposition by a preponderance of the evidence, I mean that the party must prove that the particular proposition is more likely true than not true.

I will also use the term "clear and convincing evidence." When I say that a party has to prove a proposition by clear and convincing evidence, I mean that the party must prove that the proposition is highly probable. This is a higher burden of proof than preponderance of the evidence.

**First claim – strict liability**

Mr. Mitchell's first claim is a claim of strict liability. To prevail on this claim, Mr. Mitchell must prove each of the following elements by a preponderance of the evidence:

1.     AbbVie was engaged in the business of selling AndroGel.

2.     AndroGel was in a defective condition that was unreasonably dangerous to Mr. Mitchell when the product left AbbVie's hands.

3.     AndroGel was intended to and did reach Mr. Mitchell without substantial change in its condition.

4.     AndroGel's defective condition caused physical harm to Mr. Mitchell.

Now I will define some of the terms that I have just used.

AndroGel was in a "defective condition" if, when it left AbbVie's hands, it was in a condition that was unreasonably dangerous to Mr. Mitchell. A product may be in a defective condition because of the absence of adequate warnings or instructions.

A product is "unreasonably dangerous" when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases the product with the ordinary knowledge common to the community regarding the product's characteristics.

To prevent a product from being unreasonably dangerous, the seller may be required to give a warning or instruction regarding the use of the product. The seller is required to warn of dangers that it knew, or by the application of reasonable, developed human skill and foresight should have known, were inherent in the use of its product. In considering the adequacy of warnings, you must apply the state of scientific knowledge that was reasonably available at the time AndroGel was prescribed for Mr. Mitchell. If

you determine that use of AndroGel would be unreasonably dangerous in the absence of an adequate warning or instruction, and if you determine that an adequate warning or instruction did not accompany the product, then the product was unreasonably dangerous.

Where an adequate warning or instruction is given, the product's seller may reasonably assume that it will be read and heeded, and a product bearing such a warning or instruction, which is safe for use if it is followed, is not in a defective condition, nor is it unreasonably dangerous.

### Second claim – negligence

Mr. Mitchell's second claim is a claim of negligence. To prevail on this claim, Mr. Mitchell must prove each of the following elements by a preponderance of the evidence:

1.    AbbVie's conduct was negligent.

2.    AbbVie's negligent conduct was a cause of harm to Mr. Mitchell.

3.    The harm was reasonably foreseeable.

The law requires every person and company to use reasonable care to avoid harming others. AbbVie's conduct was negligent if it failed to use reasonable care.

Reasonable care is the degree of care and judgment used by reasonably careful people and companies in the management of their affairs to avoid harming others. A company fails to use reasonable care when it does something that a reasonably careful company would not do, or fails to do something that a reasonably careful company would do under similar circumstances.

The product at issue in this case was a prescription drug. For this reason, AbbVie owed a duty to prescribing doctors to give reasonable warnings of the dangers that it knew or had reason to know were inherent in the use of AndroGel. AbbVie is not required to warn or instruct Mr. Mitchell's prescribing doctor with regard to a danger that is generally known and recognized. For purposes of this claim, AbbVie is not required to also warn Mr. Mitchell directly. In considering the adequacy of the warnings provided to Mr. Mitchell's prescribing doctor, you must apply the state of scientific knowledge that was reasonably available at the time AndroGel was prescribed for Mr. Mitchell.

The law assumes that all people have obeyed the law and have been free from negligence. The mere fact that an injury occurred is not sufficient by itself to prove negligence. It is, however, something you may consider along with other evidence.

## Third claim – fraudulent misrepresentation

Mr. Mitchell's third claim is a claim of fraudulent misrepresentation. To prevail on this claim, Mr. Mitchell must prove each of the following elements by clear and convincing evidence:

1. AbbVie made a false representation regarding a material matter. As used in this case, a false representation of a material matter is one that would be likely to affect the conduct of a reasonable person in deciding whether to prescribe or take a prescription medication.

2. AbbVie knew that the representation was false or made the representation recklessly, without knowing if it was true or false.

3. AbbVie knew that it was misleading Mr. Mitchell and/or his physician, or recklessly disregarded whether it was misleading Mr. Mitchell and/or his physician.

4. Mr. Mitchell and/or his physician reasonably relied on the representation.

5. Mr. Mitchell was damaged as a direct result of his and/or his physician's reliance on the representation.

**Causation**

Each of Mr. Mitchell's claims requires him to prove by a preponderance of the evidence (for the first and second claims) or by clear and convincing evidence (for the third claim) that AbbVie's conduct was a cause of his heart attack. AbbVie's conduct was a cause of Mr. Mitchell's heart attack if the heart attack would not have occurred but for AbbVie's conduct. Conversely, AbbVie's conduct was not a cause of Mr. Mitchell's heart attack if it would have occurred without AbbVie's conduct.

This standard does not require AbbVie's conduct to be the only cause of Mr. Mitchell's heart attack.

17

**Role of the Food and Drug Administration (FDA)**

I am next going to read you an instruction that provides a very general overview of the roles of the Food and Drug Administration (FDA) and a drug manufacturer regarding the approval and labeling of a prescription drug. This repeats an instruction I gave you at the start of the trial. You have heard a good deal of evidence regarding the FDA, and I want you to have a general overview regarding how that evidence fits in with the claims that you will be deciding in this case.

Before a prescription drug may be sold in the United States, it must be approved by the FDA. To obtain approval, the drug's manufacturer first must conduct clinical trials that are approved by the FDA. The manufacturer then submits an application for FDA approval of the drug, including a proposed label with information regarding use of the drug for its intended use. Before approving a drug for sale in the United States, the FDA approves this labeling.

However, the manufacturer has the ultimate responsibility for the content of its label and must ensure that the label's warnings remain adequate as long as the drug is on the market. A manufacturer may add or strengthen warnings on the drug's label without obtaining prior FDA approval. FDA regulations require a manufacturer to do so when there is reasonable evidence of a causal association of a serious hazard with the drug.

The claims that you will be deciding in this case are not claims for violation of FDA regulations. Rather, they are claims under state law alleging strict liability, negligence, and fraudulent misrepresentation, as I described earlier in these instructions.

18

**Compensatory damages**

If you find in favor of Mr. Mitchell and against AbbVie on one or more of Mr. Mitchell's claims, then you must decide whether Mr. Mitchell has been damaged and, if so, the amount of his damages arising from his heart attack. If you find in favor of AbbVie on the question of liability, then you will not consider the question of damages.

There are two types of compensatory damages alleged in this case, economic and non-economic. Of these two types of damages, you should consider only those you find to have been sustained by Mr. Mitchell as a result of AbbVie's fault.

Non-economic damages are the subjective, non-monetary losses that a plaintiff has sustained or probably will sustain in the future.

The law does not furnish you with any fixed standard by which to measure the exact amount of non-economic damages. However, the law requires that all damages awarded be reasonable. You must apply your own considered judgment to determine the amount of non-economic damages.

In determining the amount of non-economic damages, if any, you should consider each of the following:

    a.    Any pain, mental suffering, emotional distress, and/or humiliation that Mr. Mitchell has sustained from the time he was injured until the present and that Mr. Mitchell will sustain in the future as a result of his injuries; and

    b.    Any inconvenience and interference with Mr. Mitchell's normal and usual activities apart from activities in a gainful occupation that you find have been sustained from the time he was injured until the present and that he probably will sustain in the future as a result of his injuries.

Economic damages are the objectively verifiable monetary losses that the plaintiff has incurred or will probably incur. In determining the amount of economic

damages, if any, you should consider:

a. The reasonable value of necessary medical and other healthcare and services for the treatment of Mr. Mitchell necessitated by his heart attack.

**Punitive damages**

In addition to compensatory damages, Mr. Mitchell is seeking an award of punitive damages. If you find that AbbVie's conduct was fraudulent, intentional, or willful and wanton and that AbbVie's conduct proximately caused injury to Mr. Mitchell, and if you believe that justice and the public good require it, you may award an amount of money that will punish AbbVie and discourage it and others from similar conduct.

The term "willful and wanton conduct" means a course of action that shows actual or deliberate intention to harm or that, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.

In arriving at your decision as to the amount of punitive damages, you should consider the following three questions. The first question is the most important to determine the amount of punitive damages:

1. How reprehensible was AbbVie's conduct?

2. What actual and potential harm did defendant's conduct cause to the plaintiff in this case?

3. What amount of money is necessary to punish defendant and discourage defendant and others from future wrongful conduct?

    The amount of any punitive damages that you award must be reasonable.

21

**Final instructions**

Once you are all in the jury room, the first thing you should do is choose a presiding juror. The presiding juror should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. You may discuss the case only when all jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, such as by using a telephone, cell phone, smart phone, iPhone, Android, Blackberry, or any type of computer; by using text messaging, instant messaging, the Internet, chat rooms, blogs, websites, or social media, including services like Facebook, LinkedIn, GooglePlus, YouTube, Twitter, Instagram, or SnapChat; or by using any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the presiding juror or by one or more members of the jury. To have a complete record of this trial, it is important that you not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer.

If you send me a message, do not include the breakdown of your votes. In other words, do not tell me that you are split 6-6, or 8-4, or whatever your vote happens to be.

Verdict forms have been prepared for you.  You will take these forms with you to the jury room.

[Read the verdict forms.]

When you have reached unanimous agreement, your presiding juror will fill in and date the verdict forms, and each of you will sign them.

Advise the court security officer once you have reached a verdict.  When you come back to the courtroom, I will read the verdict aloud.

The verdict must represent the considered judgment of each juror. Your verdict must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts.

**Verdict form**

We, the jury, find as follows on the claims of the plaintiff, Jesse Mitchell, against

the defendants, AbbVie Inc. and Abbott Laboratories:

**First claim – strict liability:**    _____    for plaintiff Jesse Mitchell

    _____    for defendants AbbVie and Abbott Laboratories

**Second claim – negligence:**    _____    for plaintiff Jesse Mitchell

    _____    for defendants AbbVie and Abbott Laboratories

**Third claim – fraudulent misrepresentation:**    _____    for plaintiff Jesse Mitchell

    _____    for defendants AbbVie and Abbott Laboratories

**Compensatory damages**
(to be considered only if you have found
for plaintiff Jesse Mitchell on one or more claims)

We award plaintiff Jesse Mitchell compensatory damages as follows:

Non-economic damages
(see p. 19 of instructions):  $ _____

Economic damages:
(see p. 19-20 of instructions):  $ _____

**Punitive damages**
(to be considered only if you have found
for plaintiff Jesse Mitchell on one or more claims
and have determined to award punitive damages)

We award plaintiff Jesse Mitchell punitive damages in the amount of:

$ _____

(please go to the next page)

26

_____          _____
Presiding juror

_____          _____


_____          _____


_____          _____


_____          _____


_____

Date:  July ___, 2017